MAKAR, J.,
concurring with opinion.
This case is yet another data point among the hundreds of thousands of violent acts that occur annually while students are going to, at, or coming home from their schools. National studies document the depth and scope of the problem,[1] *641 whose magnitude is troubling and whose solution is not apparent. The following statistics are among the most recent from a “nationally representative sample of youth in grades 9-12”:[2]
• “12% reported being in a physical fight on school property” (16% for males/ 7.8% for female);
• “20% reported being bulbed on school property” (22% for females/18.2% for males).
• “16.2% reported being bubied electron-icaby (email, chat room, website, text-ing)” (22.1% for females/10.8% for males);
• “7.4% reported being threatened or injured with a weapon on school property one or more times”;
• “5.9% did not go to school on one or more days in the 30 days preceding the survey because they felt unsafe at school or on their way to or from school.”
The data cast doubt on the perception that public (and private[3]) school systems are educational safe havens; neither Florida[4] nor Duval County[5] is immune.
Policymakers in the legislative branch and administrators in the executive branch have the legal authority to take affirmative steps to reverse this tide of student violence. The judicial branch, on the other hand, plays a far more limited role. Its authority extends only to resolving those disputes that are filed in the judicial system. In some of those cases, trial courts are asked to enforce statutory and common law remedies, where appropriate, including statutory injunctions against violence, which is the focus of this appeal. Currently, four types of statutory injunctions exist in Florida: injunctions against domestic violence, repeat violence, dating violence, and sexual violence. §§ 741.30, 741.28, 784.046, Fla. Stat.; see generally Judge Amy Karan & Lauren Lazarus, Florida’s Four Orders of Protection Against Violence: Distinguishing The Difference, 77 Fla. B.J. 31 (Dec. 2003) (overview of the four statutory injunctions). Each was crafted to address specific situations where violence— or the potential for violence — was deemed sufficiently serious to warrant judicial intervention. None is specifically directed to student violence; instead, school-related incidents giving rise to an injunction must fall within one of the four existing statutory strictures. Karan, 77 B.J. at 33 *642 (noting, for example, that “repeat violence cases have become mostly love triangle cases ..., employer-employee and coworker relationships, schoolmates, neighborhood disputes, and roommates who do not have a dating or intimate relationship.”) (emphasis added).
As Judge Thomas’s thorough opinion demonstrates, the situation in this case falls outside the legislative parameters for injunctions against repeat violence; the statute requires two separate acts of statutorily-defined violence and only one occurred. We are not empowered to rewrite the statute to require only one act of violence or to add offenses to the statutory list, that the legislature did not include.
In reviewing the four statutory injunctions in Florida, it is notable that not all require two acts of violence. For example, an injunction against domestic violence does not require even one act of violence. As long as the person seeking an injunction has reasonable cause to believe he or she is in danger of becoming a victim, judicial relief is available. The statute only requires that a petitioner has been a victim or has a reasonable fear of imminent violence. § 741.30, Fla. Stat. For example, if a student was attacked by — or just feared an imminent act of violence by — her mom, dad, brother, sister, or other member of her household, she could pursue a judicial order protecting her.
One might ask why household members can get a protective injunction before a violent act occurs but students must be subject to violence twice to get court protection? One reason is that the legislature crafted the domestic injunction to protect people living in the same household who see or come in contact with each other daily thereby creating a greater potential for incidents of violence that an injunction might prevent. See generally § 741.30, Fla. Stat. (1985) (amending the statute to afford, for the first time since its 1979 enactment, protection to persons other than spouses). Of course, the student-attacker and the student-victim in this case were likely to see or be in contact with each other daily at their school; they may spend greater time together in school compared to their time with household members.
Which raises a legislative policy question of whether injunctive relief ought to be available in the school context. Injunctive relief for school-related violence may be of importance given empirical evidence showing that a greater number of middle and high-school age students “experience[ ] total victimizations (theft and violent crime) at school than away from school.”[6] In other words, rather than walking into a safer environment in which to learn, students in some school systems enter a more dangerous one. Of course, that is not true for each and every school; but, on average, it is sadly so among some school systems.
The point is that the legislature may wish to consider crafting an injunction that would apply specifically to school-related violence. Countering such an expansion is the primacy of school districts to handle their own student violence problems in their own ways; school teachers and administrators are on the front lines and should be able to deploy disciplinary and corrective measures that best address each situation in the first instance. Allowing students to obtain judicial injunctions based on just a fear of harm (like the domestic injunction statute), however, might inject courts and judicial resources into school disciplinary matters thereby potentially disrupting or interfering with *643 school administration; even a “one act of violence” statute might prove problematic unless coupled with a showing that reliance on the school district would be ineffectual. It is a very complex legislative policy question, but one perhaps worthy of study.
All this said, I fully concur in Judge Thomas’s opinion and agree that the injunction must be vacated entirely. The trial court’s motivations were laudable; he was — and apparently frequently is — presented with senseless acts of student violence that cry out for adult intervention, protection of the victims, and punishment/remediation of the offenders. But he, like each member of this Court, is a judicial officer, whose authority is constrained and may not — in this case — afford relief.

. See, e.g., Simone Robers et al., Indicators of School Crime and Safety: 2011, Nat’l Ctr. for Educ. Statistics, U.S. Dep't of Educ., and Bureau of Justice Statistics, Office of Justice Programs, U.S. Dep’t of Justice, at iii (Feb. 2012) (noting that in 2009-10 "there were *641 about 828,000 nonfatal victimizations at school, which included 470,000 victims of theft and 359,000 victims of violence))] ... about 74 percent of public schools recorded one or more violent incidents of crime[, and] 16 percent recorded one or more serious violent incidents”), http://www.bjs.gov/content/ pub/pdf/iscs 11 .pdf.

. See Understanding School Violence, Fact Sheet 2013, http://www.cdc.gov/violence prevention/pdf/yv-datasheet-a.pdf; and Youth Violence, Facts at a Glance 2012, http://www. cdc.gov/violenceprevention/pdf/yv-datasheet-a.pdf. Both facts sheets report data from the 2009-2010 school year.

. The data reflect that rates are significantly lower in private schools, but the rates are nonetheless concerning.

. Florida data for the five bulleted points is similar. See Youth Online: High Sch. Youth Risk Behavior Surveillance Sys., (Fla. 2011 Results), http://apps.nccd.cdc.gov/youthonline/ App/Results.aspx?LID=FL (10.2% of Florida students in a physical fight on school property; 14.0% bullied on school property; 12.4% electronically bullied; 7.2% threatened or injured with weapon on school property; and 6.5% felt unsafe and did not go to school). Females reported twice the rate of electronic bullying (16.6%) compared to males (8.3%).

. See, e.g., Duval Cnty. Sch. Bd. v. Buchanan, 131 So.3d 821 (Fla. 1st DCA 2014).

. Robers et al., supra note 1, at iv.